# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-02385

**ESTATE OF HARRISON MANN BEGAY**, by Felicia Herder as Administrator;
**ELIZABETH BEGAY**, as mother of decedent;
**JUSTIN MANN BEGAY**, as son of decedent;
**HARRISON MANN BEGAY, JR.**, as son of decedent;
**JEREMEY MANN BEGAY**, as son of decedent;
**KIRSTY ROSE BEGAY**, as daughter of decedent;
**TYSON MANN BEGAY**, as son of decedent;
**KARREY ROSE BEGAY**, as daughter of decedent; and
**ADAM CARRIO BEGAY**, as son of decedent,

       Plaintiffs,

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, COLORADO**;
**MONTEZUMA COUNTY SHERIFF'S OFFICE**;
**DENNIS SPRUELL, FORMER MONTEZUMA COUNTY SHERIFF**, in his individual and official capacities;
**RAGELIO MAYNARD, MONTEZUMA COUNTY SHERIFF'S DEPUTY AND/OR DETENTIONS OFFICER,** in his individual and official capacities;
**MELISSA CURLEY-HOUSE, MONTEZUMA COUNTY SHERIFF'S DEPUTY AND/OR DETENTIONS OFFICER,** in her individual and official capacities;
**FRANK LOBUE, MONTEZUMA COUNTY SHERIFF'S DEPUTY AND/OR DETENTIONS OFFICER,** in his individual and official capacities;
**RICHARD GALLEGOS, MONTEZUMA COUNTY SHERIFF'S DEPUTY AND/OR DETENTIONS OFFICER,** in his individual and official capacities;
**ANNA UTLEY, NURSE, MONTEZUMA COUNTY SHERIFF'S OFFICE,** in her individual and official capacities;
**SOUTHWEST MEMORIAL HOSPITAL, INC., D/B/A CORTEZ PRIMARY CARE** an affiliate of **SOUTHWEST HEALTH SYSTEM, INC.**, a Colorado private, non-profit corporation; and
**TODD FOWLER, M.D.**, in his individual and official capacities,

       Defendants.

---

## SECOND AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiffs, by and through their counsel, hereby submit their Second Amended Complaint and Jury Demand against the Defendants, as follows:

## NATURE OF THE ACTION

1.      Harrison Mann Begay was incarcerated by the Montezuma County Sheriff in Cortez, Colorado from October 26, 2013 until his death on October 27, 2013 while in police custody.  Decedent was an enrolled member of the Navajo Nation.  He was well known in local community as an acute alcoholic.   Plaintiffs bring this civil rights action to redress the deprivation under color of state law of rights, privileges and immunities secured to Mr. Begay by provisions of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that Mr. Begay was denied access to adequate and competent medical treatment and that the acts and/or policies and practices of the Defendants were knowing, deliberate and intentional; they were in disregard for the health and well-being of Mr. Begay; and that such acts, policies and practices are shocking to the conscience of civilized persons and intolerable in a society governed by laws and considerations of due process.  Plaintiffs further allege that while in the custody of Defendant former Sheriff Spruell and Defendant Montezuma County Sheriff's Office on October 26, 2013, Mr. Begay was a victim of inappropriate and illegal actions taken by police officers in connection with their official duties, among other matters.

2.      Mr. Begay's death on October 27, 2013 is believed to be the second of four inmate deaths that occurred while such inmates were in custody of former Sheriff Spruell and/or the Montezuma County Sheriff's Office from 2013 to the present, some of which were alcohol-related.

3.     On October 25, 2013 and October 26, 2013, Mr. Begay received medical care at Southwest Memorial Hospital, Inc. in Cortez, Colorado, primarily for acute alcohol intoxication.

4.     Plaintiffs further allege that on October 25, 2013 and October 26, 2013, Defendant Southwest Memorial Hospital, Inc. negligently treated Mr. Begay who had ingested fatal levels of alcohol upon admission and had a serious head injury; and that during the early morning hours of October 26, 2013, Defendant Southwest Memorial Hospital, Inc. and Defendant Todd Fowler, M.D., the emergency room physician on duty that day, superficially treated Mr. Begay and cleared him for release into the custody of Cortez Police Department officers knowing Mr. Begay had ingested fatal levels of alcohol, that he had an emergency medical condition and needed to be stabilized, and was not competent to give his informed consent to his discharge, among other matters.  Plaintiffs believe that Mr. Begay would not have died in jail on October 27, 2013 had he received appropriate medical care.  Plaintiffs further allege state law claims against Defendants for negligence and wrongful death.

### JURISDICTION AND VENUE

5.     The United States District Court for the District of Colorado has both diversity and federal-question jurisdiction over Plaintiffs' claims against Defendants under 42 U.S.C. §§ 1331, 1332 and 1343, as well as supplemental jurisdiction over Plaintiffs' state law claims pursuant to 42 U.S.C. §1337.  This action arises under the Constitution and the laws of the United States and the State of Colorado, including 42 U.S.C. § 1983.  The amount in controversy exceeds $75,000.

6.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). Defendants reside in the District of Colorado, as that term is defined in 28 U.S.C. § 1391(c). Alternatively, venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2).

7.      Insofar as required with respect to the state law claims set forth herein, or which may be added, Plaintiffs timely gave notice and properly served notice of such claims under the Colorado Governmental Immunity Act, COLO. REV. STAT. § 24-10-101, *et seq*. (2008).

**PARTIES**

**Plaintiffs:**

8.      At all pertinent times, decedent Harrison Mann Begay was a resident of the State of Arizona and the United States.

9.      At all pertinent times, Plaintiffs are Felicia Herder, the sister and Administrator of the Estate of Harrison Mann Begay; Elizabeth Begay, the mother of decedent; Justin Mann Begay, a son of decedent; Harrison Mann Begay, Jr., a son of decedent; Jeremey Mann Begay, a son of decedent; Kirsty Rose Begay, a daughter of decedent; Tyson Mann Begay, a son of decedent; Karrey Rose Begay, a daughter of decedent; and Adam Carrio Begay, a son of decedent, and all of whom were and are residents of the State of Arizona and the United States.

**Defendants:**

10.     Upon information and belief, the County of Montezuma is a political subdivision of the State of Colorado.

11.     Upon information and belief at all relevant times, the County of Montezuma and all of its employees and agents were acting under the color of Colorado state law.

12.     Upon information and belief, the Montezuma County Sheriff's Office is a political subdivision of the State of Colorado with an address of 730 E. Driscoll St., Cortez, CO 81321.

13.     Upon information and belief, at all relevant times, the Montezuma County Sheriff's Office and all of its defendant employees and agents were acting under the color of Colorado state law, and is operated, controlled and maintained by the County of Montezuma.

14.     Upon information and belief, at all relevant times, Dennis Spruell, the former Montezuma County Sheriff, was the duly elected Sheriff within and for the County of Montezuma, State of Colorado and acting under the color of Colorado state law.

15.     Former Sheriff Spruell is a resident of the State of Colorado and a citizen of the United States of America.

16.     Former Sheriff Spruell, in his official capacity as the Sheriff for Montezuma County, Colorado is the proper person to be sued under 42 U.S.C. § 1983 because, and upon information and belief, he had actual knowledge of, acquiesced in, directed and/or personally cooperated in the challenged delegated final decisions of Defendants Sheriff's Deputies and/or Detention Officers, including the Nurse of the Montezuma County Sheriff's Office sued herein, who were deliberately indifferent to the constitutional rights of Mr. Begay.

17.     Former Sheriff Spruell is also properly sued directly under 42 U.S.C. § 1983 for his deliberately indifferent unconstitutional decisions, policies, practices, habits, customs and usages with respect to training and supervision of the Sheriff's Deputies and/or Detention Officers, including the Nurse of the Montezuma County Sheriff's Office sued herein.

18.     Former Sheriff Spruell is also properly sued vicariously under state law for the state law tort claims asserted against former Sheriff Spruell's Sheriff's Deputies and/or Detention Officers, including the Nurse of the Montezuma County Sheriff's Office sued herein.

19.     Upon information and belief, at all relevant times, Defendants Ragelio Maynard, Melissa Curley-House, Frank Lobue, Richard Gallegos, and Anna Utley were and are citizens and residents of the State of Colorado and the United States of America, and were employees of Defendant Montezuma County Sheriff's Office acting under the color of Colorado state law in their capacities as law enforcement officers and medical personnel.

20.     Upon information and belief, Defendants Ragelio Maynard, Sheriff's Deputy and/or Detention Officer; Melissa Curley-House, Sheriff's Deputy and/or Detention Officer; Frank Lobue, Sheriff's Deputy and/or Detention Officer; and Richard Gallegos, Sheriff's Deputy and/or Detention Officer in their individual and official capacities, were all on duty at or about the time of Mr. Begay's death, and failed to take appropriate action to prevent his death.

21.     Upon information and belief, at all relevant times, Anna Utely, was a licensed nurse with a principal place of business at Montezuma County Sheriff's Office, who served as a the Nurse at Montezuma County Sheriff's Office.

22.     Upon information and belief, at all relevant times, Southwest Memorial Hospital, Inc., d/b/a Cortez Primary Care, a Colorado private, non-profit corporation with its principal office address at 1311 N. Mildred Rd., Cortez, CO 81321, was and is owned and operated by Southwest Health System, Inc., or is an affiliate of Southwest Health System, Inc. with its principal office address at 1311 N. Mildred Rd., Cortez, CO 81321.

23.     At all relevant times, Southwest Memorial Hospital, Inc., and all of its employees and agents were acting and doing business under Colorado state law.

24.     Upon information and belief, Todd Fowler, M.D. is a medical doctor with a principal place of business at Southwest Memorial Hospital, Inc. who served as the primary emergency room physician and who purported to treat Mr. Begay on October 25, 2013 and October 26, 2013.

25.     At all times pertinent to this action, individually and/or in his official capacity, Todd Fowler M.D. was an emergency-medicine physician, employed by Southwest Memorial Hospital, Inc., and was responsible for the promulgation and enforcement of rules, regulations, policies and practices, either formally or by custom, regarding the medical treatment of acutely intoxicated patients such as Mr. Begay, and/or was responsible for the training, supervision and conduct of certain medical employees who were responsible for the medical care of Mr. Begay on October 25, 2013 and October 26, 2013, and/or instigated or participated in the mistreatment of Mr. Begay, as described in more detail herein.

## FACTUAL ALLEGATIONS

26.     On October 27, 2013, at 4:27 a.m., Harrison Mann Begay, a 38 year-old Navajo male, was pronounced dead while in a holding cell of Defendant Montezuma County Sheriff's Office.

27.     Mr. Begay's amended autopsy report stated that the cause of death was "complications of chronic alcohol use."

28.     Mr. Begay, an enrolled member of the Navajo Nation, was domiciled in and as a resident of Tonalea (Red Lake), Arizona.

29.     Mr. Begay had seven surviving biological children who survive him.

30.     Mr. Begay was not married at the time of his death.

31.     Felicia Herder is Mr. Begay's biological sister having been duly appointed as the Administrator of her brother's Estate by the Tuba City Family Court (Navajo Nation) on November 18, 2013.

32.     In the months before his death, Mr. Begay frequently traveled to Cortez, Colorado to purchase and consume alcohol.

33.     Cortez, Colorado is an immediate border town to the Navajo Nation and the Ute Mountain Ute tribe where some of the local Native American population with chronic drinking problems purchase and consume alcoholic beverages, which is well known to Defendants and the community.

34.     The City of Cortez does not have a detoxification ("detox") center for its alcohol and drug-dependent citizens, who are inordinately Native American and disadvantaged.

35.     Defendant Southwest Memorial Hospital, Inc. does not have a medically supervised detox program for its alcohol and drug-dependent patients, who are inordinately Native American and disadvantaged.

36.     Defendant Montezuma County Sheriff's Office does not have a medically supervised detox program for its alcohol and drug-dependent inmates, who are inordinately Native American and disadvantaged.

37.     The closest detoxification center for chemically dependent patients and inmates is in Durango, Colorado, a two-hour drive from Cortez.

38.     Upon information and belief, from 2013 to the present, Mr. Begay was the second of four inmates to die in jail while in custody of the Montezuma County Sheriff's Office.

39.     On October 24, 2015 at approximately 4:30 a.m., a middle aged homeless woman died in custody of Defendant Montezuma County Sheriff's Office from acute alcohol intoxication with blood alcohol content ("BAC") at booking of .268%.  Hers was the most recent alcohol-related death that occurred while an inmate was in custody of Defendant Montezuma County Sheriff's Office from 2013 to the present.

40.     At all relevant times herein, Mr. Begay was an acute alcoholic who posed a danger to himself.

41.     On May 18, 2013, about six months before his death, Mr. Begay was arrested by the Cortez Police Department for public intoxication, transported to the emergency room at Defendant Southwest Memorial Hospital, Inc. for medical clearance, and then jailed by Defendant Montezuma County Sheriff's Office, which was all too familiar with Mr. Begay at the time of his death.

42.     On May 21, 2013, also about six months before his death, Mr. Begay was arrested by the Cortez Police Department for public intoxication with a BAC of .276% and jailed by Defendant Montezuma County Sheriff's Office.

43.     With reference to the allegation in paragraph no. 42 above, the arresting officer noted in his report that he ". . . had been on two calls the previous day [May 20, 2013] where Mr. Begay was so intoxicated he was transported to the hospital [Defendant Southwest Memorial Hospital, Inc.].  The first incident he [Mr. Begay] was transported and released a couple hours

later when he could walk again.  A short time later he was transported to the hospital [Defendant Southwest Memorial Hospital, Inc.] after he became intoxicated and fell down."

44.     On October 12, 2013, about two weeks before his death, Mr. Begay was arrested for public intoxication by the Cortez Police Department with an open warrant for his arrest, transported to Defendant Southwest Memorial Hospital, Inc. for emergency medical treatment, and then incarcerated by Defendant Montezuma County Sheriff's Office.

45.     In the months before his death, Mr. Begay was well known to Defendant Montezuma County Sheriff's Office due to a number of arrests for public intoxication and/or trespassing which resulted in his medical treatment at Defendant Southwest Memorial Hospital, Inc. on multiple occasions, and which is the only hospital in town.

46.     After October 12, 2013, Mr. Begay's alcoholism became more acute when he would travel to Cortez, Colorado, and rapidly consume alcoholic beverages causing slurred speech, muscle incoordination, falling and occasionally loss of consciousness.

47.     Upon information and belief, during the afternoon of October 25, 2013, Mr. Begay walked from The Bridge, a local emergency shelter for the homeless, to the Cortez Walmart to obtain and drink Listerine.

48.     Listerine is a mouthwash that is approximately 30% alcohol making it more potent than beer, wine and some liquors.

49.     At approximately 4:30 p.m. on October 25, 2013, Mr. Begay was found on the floor of the men's room in Walmart by the Cortez police with a 3 cm. hematoma on his forehead with swelling, and acutely intoxicated.  Mr. Begay had been drinking Listerine.

50.     With regard to this incident, the police report from the Cortez police department stated that Mr. Begay "had walked from the shelter back her [sic] and had himself somemore [sic] Listerine," indicating that local law enforcement knew that Mr. Begay habitually drank Listerine.

51.     On October 25, 2013 at 5:06 p.m., Mr. Begay was admitted to the Emergency Room at Defendant Southwest Memorial Hospital, Inc. after being transported to the hospital by an Emergency Medical Services unit ("EMS") owned and operated by Defendant Southwest Memorial Hospital, Inc., with an "acuity Level 4," meaning that Defendant Southwest Memorial Hospital, Inc. determined that based on a severity index of five to one, with Level 1 indicating the greatest urgency, Defendant Southwest Memorial Hospital, Inc. determined that Mr. Begay's Level 4 acuity level meant that he was stable with a medical condition that was less urgent.

52.     On October 25, 2013, Defendant Todd Fowler, M.D. was the attending physician in the emergency room of Defendant Southwest Memorial Hospital, Inc. and noted that at 5:48 p.m. that day, Mr. Begay had a BAC of "376," or .376%.

53.     Even though Mr. Begay's BAC of .376% was a near fatal alcohol level as determined by Defendant Fowler and that upon transport to the hospital, EMS assessed Mr. Begay and determined that he was combative, disoriented and neurologically unresponsive with "an altered level of consciousness [and] mental status," Defendant Southwest Memorial Hospital, Inc. and Defendant Fowler negligently determined that Mr. Begay was medically stable upon his admission to Defendant Southwest Memorial Hospital, Inc. on October 25, 2013.

54.     A lethal dose of blood alcohol concentration producing death from blood alcohol poisoning is typically a BAC in the range of 0.35% and above.

11

55.     Upon admission to Defendant Southwest Memorial Hospital, Inc. on October 25, 2013, Defendant Fowler knew Mr. Begay was combative and neurologically unresponsive with a near fatal BAC level of .376%.  Mr. Begay also presented that day with a head injury which required a CAT scan, which Defendant Fowler ordered.

56.     On October 25, 2013, Defendant Fowler's medical treatment of Mr. Begay's acute intoxication only consisted of taking his vital signs and giving him a "rally pack" of vitamins after which Defendant Fowler summarily discharged Mr. Begay to The Bridge emergency homeless shelter in Cortez with a "courtesy ride" at 8:15 p.m.

57.     The Bridge is not a medical facility and has no medical personnel on staff, which was known to Defendant Fowler and Defendant Southwest Memorial Hospital, Inc. at all relevant times herein.

58.     Upon information and belief, Defendant Fowler discharged Mr. Begay because he believed that as an acute alcoholic, Mr. Begay had a higher tolerance for alcohol and that if severely intoxicated patients like Mr. Begay, who was Navajo, presented who could "walk and talk," Defendant Fowler and Defendant Southwest Memorial Hospital, Inc. would routinely discharge them regardless of whether their BAC was at near fatal levels even though such patients were a danger to themselves, as was Mr. Begay.

59.     Upon information and belief, on October 25, 2013, Defendant Fowler knew that an unmistakable medical emergency existed to treat and stabilize Mr. Begay or refer him to a detox center in Durango, an acutely alcoholic patient with a BAC of .376%, as opposed to discharging him to the local homeless shelter with a "courtesy ride."

60.     But Defendant Fowler declined to provide adequate or appropriate medical care to Mr. Begay on October 25, 2013 because in Defendant Fowler's medical opinion, Mr. Begay had a higher tolerance for alcohol than a naïve user of alcohol and simply because he could "walk and talk."

61.     Upon information and belief, and without limitation, Defendant Fowler discharged Mr. Begay because he believed Mr. Begay to be an acute alcoholic with a high tolerance for alcohol consumption who did not require further medical care and/or stabilization or a referral to a detox center in Durango or elsewhere; Mr. Begay could "walk and talk" and therefore did not require further medical care and/or stabilization and/or a referral to a detox center in Durango or elsewhere; Mr. Begay was merely one of a multitude of Native American patients routinely admitted to Defendant Southwest Memorial Hospital, Inc. and treated by Defendant Fowler for acute alcohol intoxication, and due to the high cost of emergency care for indigent patients like Mr. Begay, Defendant Fowler discharged or "dumped" Mr. Begay as a patient because of his perceived inability to pay for emergency medical care and the hospital's need to contain costs; Mr. Begay was privately deemed by Defendant Fowler to be an incurable alcoholic, part of the endemic alcoholism affecting some Native Americans in Cortez, and refused Mr. Begay appropriate medical or social services resources because he was deemed to be incurable; and based on Mr. Begay's race.

62.     Upon information and belief, "patient dumping" of acutely intoxicated patients by Defendant Southwest Memorial Hospital, Inc. is a common practice affecting many in the local Native American population, primarily Navajo and Ute Mountain Ute tribal members, who are admitted to the emergency room at Defendant Southwest Memorial Hospital, Inc. and then

discharged without adequate medical care despite being physically and mentally impaired, and having medical conditions that may deteriorate. Such patients are potentially a danger to themselves, as was Mr. Begay, who was wrongfully discharged on October 25, 2013 by Defendant Southwest Memorial Hospital, Inc. and Defendant Fowler who failed to monitor him sufficiently as a patient with a near fatal BAC level.

63.      Upon information and belief, and on an annual basis, Defendant Southwest Memorial Hospital, Inc. is deluged with patients who suffer from alcohol use disorders, yet Defendant Southwest Memorial Hospital, Inc. lacks any or sufficient protocols and/or policies for the management of such patients who represent a severely at-risk Native American population, including Mr. Begay, in contrast with a number of other local hospitals in the Four Corners area that treat such patients with special concern for the clinical problem of rampant alcoholism in reservation border towns adjacent to the exterior boundaries of the Navajo Nation such as Gallup, New Mexico; Flagstaff, Arizona; and Farmington, New Mexico.

64.      The death of Mr. Begay is an example of the systemic problem of Defendants' failure to provide adequate medical attention to a Navajo citizen who was a known alcoholic suffering from an acute episode.

65.      Upon information and belief, on October 25, 2013, Mr. Begay was discharged from Defendant Southwest Memorial Hospital, Inc. by Defendant Fowler at 8:10 p.m.

66.      Upon information and belief, on October 25, 2013, Mr. Begay checked himself into The Bridge, a local emergency homeless shelter, at about 8:30 p.m.

67.     When Mr. Begay was admitted to The Bridge on October 25, 2013, he registered a BAC of .223%, almost three times the legal limit of .08% in the state of Colorado for drivers over 21 years old.

68.     On October 25, 2013 at 10:51 p.m., and still acutely intoxicated, Mr. Begay checked himself out of the homeless shelter, and returned to the Cortez Walmart where he continued to drink Listerine heavily with the intention of becoming even more intoxicated.

69.     Upon information and belief, on October 26, 2013 and at about 1:00 a.m., about two hours later, the Cortez police found Mr. Begay lying on the floor of a bathroom in the Cortez Walmart.  Mr. Begay was heavily intoxicated.

70.     Upon information and belief, Mr. Begay was subsequently arrested by the Cortez police for trespassing and transported to the emergency room of Defendant Southwest Memorial Hospital, Inc. by an EMS unit owned and operated by Defendant Southwest Memorial Hospital, Inc., where he was again treated by Defendant Fowler.

71.     Between October 25, 2013 at 5:06 p.m. and October 26, 2013 at 1:12 a.m., Mr. Begay had returned to the Cortez Walmart and continued to binge on Listerine, which was known to Defendant Southwest Memorial Hospital, Inc., Defendant Fowler, and Defendant Montezuma County Sheriff's Office at all relevant times herein.

72.     On October 26, 2013 at 1:12 a.m., Mr. Begay was purportedly readmitted to the emergency room of Defendant Southwest Memorial Hospital, Inc. by an EMS unit, and purportedly triaged in that emergency room, merely eight hours after he was admitted to Defendant Southwest Memorial Hospital, Inc. for acute alcohol intoxication on October 25, 2013 at 5:06 p.m., when Mr. Begay had a BAC of .376%.

73.     Upon information and belief and with reference to the allegations in paragraph 72 above, Mr. Begay was not, in fact, transported to the emergency room of Defendant Southwest Memorial Hospital, Inc. by an EMS unit, but was instead transported to the hospital by the Cortez police in a Cortez police patrol car, whereupon Mr. Begay was purportedly treated in the back of that patrol car in the hospital parking lot by Defendant Southwest Memorial Hospital, Inc., Defendant Fowler and/or other hospital personnel, including a nurse.  While in the parking lot, some or all of these Defendants and/or other hospital personnel treated Mr. Begay cursorily for several minutes and cleared him for release to Defendant Montezuma County Sheriff's Office, knowing that Mr. Begay was acutely intoxicated and had serious, if not life threatening medical needs.

74.     Upon information and belief, Defendant Southwest Memorial Hospital, Inc., Defendant Fowler and/or other hospital personnel fraudulently altered and produced Mr. Begay's medical records on and for October 26, 2013, concealing the fact that he had not been treated in the hospital's emergency room, but instead had been superficially treated in the hospital parking lot while sitting in the back of a Cortez police patrol car.

75.     Upon information and belief, Defendant Fowler then cleared Mr. Begay for release to the County jail while he was sitting in the back of a Cortez police patrol car in the hospital parking lot, and while refusing and failing to admit Mr. Begay to the emergency room that night.  In doing so, Defendant Fowler and Defendant Southwest Memorial Hospital, Inc. provided negligent medical care to Mr. Begay which was a proximate cause of his death on October 27, 2013.

16

76.     On October 26, 2013 at 1:22 a.m., Defendant Fowler, the attending emergency room physician, noted, "patient [Mr. Begay] presents with alcohol intoxication" with symptoms beginning "today" and that Mr. Begay had "experienced similar episodes in the past."  Defendant Fowler also noted that Mr. Begay was "seen earlier in the evening (10-25-13) for etoh intoxication, fall, found down in Walmart bathroom. cleared.  neg head CT. was taken to shelter. walked back to Walmart.  [and] found intoxicated on floor. . . ."

77.     At this time, and with reference to the allegations in paragraph 76 above, Defendant Fowler further noted that Mr. Begay was experiencing "shortness of breath [and] vomiting," while failing to take a medically relevant complete blood count, comprehensive serum chemistry panel, urine toxicology, and evaluate his neurologic and mental status, among other assessments.

78.     On October 26, 2013 at 1:22 a.m., Defendant Fowler, the attending emergency room physician made a differential diagnosis of "alcohol intoxication, hypoglycemia [and that Mr. Begay had an] intracranial bleed," yet failed to perform any triage procedures on Mr. Begay or provide him any medication or intravenous access because Dr. Fowler had no desire to provide adequate medical care to Mr. Begay to guard against severe withdrawal symptoms or related medical issues and perhaps, save his life.

79.     Upon information and belief, Mr. Begay was negligently and superficially treated in the back seat of Cortez police patrol car in the hospital parking lot by Defendant Fowler and/or other hospital personnel, and not in the emergency room of Defendant Southwest Memorial Hospital, Inc. as noted in Mr. Begay's medical records.

80.     On October 26, 2013 at 1:22 a.m., Mr. Begay was discharged to County jail by Defendant Fowler and released into the custody of Defendant Spruell and Defendant Montezuma County Sheriff's Office with "Discharge Instructions" for Mr. Begay to "follow-up" with a "private physician" in "two-three days" due to "alcohol an drug addiction, [recommending] finding treatment [and noting] head injuries."  In his "Discharge Instructions," Defendant Fowler also diagnosed Mr. Begay as having "[a]lcohol intoxication, [d]ependence acute [, and a] head injury."

81.     On October 26, 2013, Defendant Fowler stated in his "Physician Documentation" notes for Mr. Begay that he had "head injuries," that alcohol intoxication "is an ongoing problem" for him, and that Mr. Begay needed to "follow up" with a "private physician," even though Defendant Fowler knew quite well that Mr. Begay was indigent and did not have a "private physician" and private health insurance or was underinsured, and was not competent to give his informed consent to his discharge instructions or otherwise understand them because Mr. Begay was acutely intoxicated.

82.     To the extent English was a second language for Mr. Begay, who was fluent in Navajo, Defendant Fowler failed to obtain Mr. Begay's informed consent by explaining his discharge instructions to him in Navajo, or having an interpreter present to do so.

83.     At the time of Mr. Begay's discharge on October 26, 2013, Defendant Fowler negligently noted that Mr. Begay was medically "stable" when this was not the case.

84.     Defendant Fowler knew that Mr. Begay was medically *unstable* upon discharge and that he was capable of treating Mr. Begay with an appropriate level of care as one of the hospital's sickest patients.

85.     At the time of Mr. Begay's discharge from the hospital on October 26, 2013 at about 1:30 a.m., Defendant Fowler noted that Mr. Begay needed to "stop alcohol or [Mr. Begay] will die," indicating that Defendant Fowler knew that Mr. Begay was an acute alcoholic and a serious danger to himself.

86.     About 26 hours later on October 27, 2013, Mr. Begay did indeed die of alcohol poisoning while in custody of Defendant former Sheriff Spruell and Defendant Montezuma County Sheriff's Office.

87.     With reference to the allegation in paragraph 85 above, Defendant Fowler knew that Mr. Begay was at risk of dying and/or a danger to himself at the time Mr. Begay was discharged from Defendant Southwest Memorial Hospital, Inc.'s emergency room and/or released from the hospital parking lot on October 26, 2013 while sitting in the back seat of a Cortez police patrol car in an unstable medical condition.

88.     At all relevant times herein, Defendant Fowler and/or other hospital personnel knew that Mr. Begay had an emergency medical condition and negligently failed to provide appropriate medical care to Mr. Begay before his death, which was a proximate cause of Mr. Begay's death.

89.     On October 26, 2013, Defendant Fowler failed to obtain a BAC test from Mr. Begay and triage him by performing other related laboratory tests.

90.     Mr. Begay was not competent to refuse to give his informed consent to a BAC test (if Mr. Begay did refuse) due his acute level of intoxication, of which, upon information and belief, Defendant Fowler and/or other hospital personnel were aware.

91.     When Defendant Fowler discharged Mr. Begay from the emergency room on October 26, 2013, or released him from the hospital's parking lot while he was sitting in the back seat of a Cortez police patrol car that night, Defendant Fowler and/or other hospital personnel knew that Mr. Begay was acutely intoxicated, had a head injury and was neurologically unstable, yet Defendant Fowler discharged Mr. Begay anyway and failed to exercise the necessary standard of care for a patient showing significant signs of physical and mental impairment.

92.     Before discharging Mr. Begay on October 26, 2013, Defendant Fowler and Julia Buff, R.N., the primary nurse who attended to Mr. Begay that night, purported to treat him from 1:12 a.m. to 1:22 a.m. in the emergency room for a total of only about 10 minutes, which, if Defendant Fowler and/or other hospital personnel had not treated Mr. Begay in the hospital parking lot while he was sitting in the back seat of a Cortez police patrol car at about the same time, was negligent and reckless because Defendant Fowler knew that Mr. Begay was acutely intoxicated and required stabilization and a higher level of medical care, which Defendant Fowler knowingly, recklessly and willfully failed to provide, even though Defendant Fowler was capable of providing such care.

93.     Prior to Mr. Begay's discharge or release from Defendant Southwest Memorial Hospital, Inc. on October 26, 2013, Defendant Fowler and/or other hospital personnel failed to treat and/or stabilize Mr. Begay, also for example, by obtaining IV access to correct any electrolyte abnormalities, determining whether Mr. Begay was at risk of aspiration, and/or placing a nasogastric tube in Mr. Begay's stomach to evacuate the contents of his stomach, and/or transferring him to a detox center in Durango, and administering a BAC test, all of which were a proximate cause of Mr. Begay's death on October 27, 2013.

94.     On October 26, 2013, Defendant Fowler negligently treated Mr. Begay by only placing an arm band on his left wrist and taking his vital signs over about a 10 minute period, which upon information and belief, occurred in the hospital parking lot while Mr. Begay was sitting in the back seat of a Cortez police patrol car.  After providing this deliberately indifferent and negligent medical treatment, Defendant Fowler cleared Mr. Begay for release into the custody of Defendant Montezuma County Sheriff's Office and discharged him, which was a proximate cause of Mr. Begay's death on October 27, 2013.

95.     Upon his discharge from Defendant Southwest Memorial Hospital, Inc. on October 26, 2013, Mr. Begay gave his written consent to Defendant Fowler for his discharge while he was acutely intoxicated, which was a proximate cause of Mr. Begay's death on October 27, 2013 because Mr. Begay lacked the capacity to do so.

96.     Mr. Begay signed Defendant Fowler's discharge instructions and gave his written consent that he understood such discharge instructions, including Defendant Fowler's diagnosis of "alcohol and drug addiction [and] head injuries," and that Mr. Begay needed to "follow-up" with a "private physician. . . to establish care," when Mr. Begay clearly lacked the capacity to give an informed consent to his discharge due to his acute level of intoxication, while understanding the reasons for and risks of his discharge, and which negligence on the part of Defendant Fowler and Defendant Southwest Memorial Hospital, Inc. was a proximate cause of Mr. Begay's death on October 27, 2013.

97.     On October 26, 2013 at 1:26 a.m., and upon information and belief, Mr. Begay was discharged from Defendant Southwest Memorial Hospital, Inc.'s emergency room—

according to his hospital records—or  released from the hospital parking lot not ever having been admitted to the emergency room that night and taken to County jail.

98.     In his "prisoner medical clearance," Dr. Fowler blithely stated, given Mr. Begay's acute level of intoxication and Defendant Fowler's gross failure to treat Mr. Begay under a reasonable standard of care, that "I have examined the prisoner and find him acceptable for admission to the jail.  I have no specific suggestions regarding the care of the prisoner for the condition for which I have examined him."

99.     On November 11, 2013, Jessie Neitzer, Defendant Southwest Memorial Hospital, Inc.'s Director of Compliance and Risk Management, wrote a letter to Plaintiff Felicia Herder stating, in part,

> A thorough review of the care Mr. Begay received at Southwest Memorial [Hospital, Inc.] has been conducted.  We are unable to find any correlation between Mr. Begay's passing [on October 27, 2013] and the care he received at Southwest Memorial [Hospital, Inc.]  more than 24 hours earlier [presumably on October 25, 2013 and October 26, 2013].

100.     Mr. Begay's autopsy report states that 12 hours after being taken to jail in the custody of Defendant Montezuma County Sheriff's Office on October 26, 2013, Mr. Begay had a BAC of 0.151%.

101.     Robert Kurtzman, M.D., the forensic pathologist who performed Mr. Begay's autopsy, confirmed that at the time Mr. Begay was jailed during the early morning hours on October 26, 2013 by Defendant Montezuma County Sheriff's Office and after his arrest at the Cortez Walmart while binging on Listerine, Mr. Begay likely had a BAC of approximately 0.40%, a near fatal level.

102.    Upon information and belief, on October 26, 2013 at 1:26 a.m., when Defendant Fowler discharged Mr. Begay from the emergency room or released him from the hospital parking lot without having been admitted to the hospital's emergency room, Mr. Begay had a BAC of approximately 0.40%, a near fatal level.

103.    In discharging Mr. Begay from the emergency room on October 26, 2013 at 1:26 a.m. with a near fatal BAC level, or releasing him from the hospital parking lot without having been admitted to the hospital's emergency room on October 26, 2013 at about 1:26 a.m. with a near fatal BAC level, Defendant Fowler negligently and recklessly failed to provide adequate medical care to Mr. Begay and abandoned him as a patient.

104.    Upon information and belief, and if Mr. Begay had, in fact, been initially transported to the hospital emergency room on October 26, 2013 at 1:12 a.m. by an EMS unit owned and operated by Defendant Southwest Memorial Hospital, Inc. and treated by Defendant Fowler in the emergency room, Mr. Begay was afterwards transported *a second time* to that emergency room by the Cortez police for medical care and treated in the hospital parking lot while sitting in the back seat of a Cortez police patrol car.

105.    Upon information and belief, Mr. Begay's second visit to the hospital, if it did happen, occurred after Mr. Begay had been discharged from the emergency room of Defendant Southwest Memorial Hospital, Inc. on October 26, 2013 at about 1:26 a.m.

106.    Upon information and belief, the second time Mr. Begay was taken to the emergency room of Defendant Southwest Memorial Hospital, Inc. on October 26, 2013, he was not formally admitted into the hospital's emergency room for treatment, but was instead negligently treated by Defendant Southwest Memorial Hospital, Inc. in the hospital parking lot

while sitting in the back seat of a Cortez police patrol unit in the presence of Mr. Begay's Cortez police escort.

107.    Upon information and belief, and with regard to the allegation in paragraph 106 above, Mr. Begay's negligent treatment in the hospital parking lot lasted only several minutes, although he presented with acute alcohol intoxication and other unidentified injuries that required *either* inpatient detoxification or medical stabilization and maintenance.

108.    Upon information and belief, Defendant Fowler and Defendant Southwest Memorial Hospital, Inc. produced fraudulent medical records regarding Mr. Begay's medical care on October 26, 2013 to conceal the fact that Mr. Begay was negligently treated in the hospital parking lot, and/or negligently treated a second time in the hospital parking lot in violation of hospital policies and/or protocols, and/or to conceal the fact that Mr. Begay had not been treated in Defendant Southwest Memorial Hospital, Inc.'s emergency room at all on October 26, 2013, but was instead negligently and superficially treated in a Cortez police patrol car in the hospital parking lot with a near fatal BAC level of about 0.40%.

109.    Upon information and belief, Defendant Southwest Memorial Hospital, Inc. has specific protocols to be followed upon admission of a patient and/or the admission of an acutely intoxicated patient such as Mr. Begay, which have been modified by the hospital since Mr. Begay's death on October 27, 2013 to address this Defendant's negligence.

110.    On October 25, 2013 and October 26, 2013, those protocols were not followed by Defendant Southwest Memorial Hospital, Inc. and Defendant Fowler who were aware at all relevant times herein that Mr. Begay was *in extremis*.

111.    Yet these Defendants failed to provide adequate medical care to Mr. Begay with the vain hope that he would "sleep it off."

112.    Mr. Begay's death is a direct and proximate result and consequence of the unlawful and negligent and reckless conduct of the Defendants referenced above in paragraph 110, and also because Mr. Begay was in that category of patients whose medical needs were so serious that Defendant Southwest Memorial Hospital, Inc. should not have cleared him for release to the County jail on October 26, 2013, regardless of exactly where and when he was purportedly treated, and before he was jailed by Defendant Montezuma County Sheriff's Office on October 26, 2013.

113.    During the early morning hours of October 26, 2013, Plaintiff Felicia Herder, her mother, Plaintiff Elizabeth Begay—the biological mother of the decedent—and Larrison Begay, Harrison Mann Begay's brother, pulled into Defendant Montezuma County Sheriff's Office parking lot from their home in Tonalea, Arizona after about a five hour drive.  A Sheriff's deputy had previously called Ms. Herder and notified her that her brother was in the custody of Defendant Montezuma County Sheriff's Office

114.    With reference to the allegations in paragraph 113 above, just as Plaintiff Felicia Begay, Plaintiff Elizabeth Begay and Larrison Begay pulled into the Sheriff's Office parking lot, they saw Mr. Begay being transported from Defendant Southwest Memorial Hospital, Inc. to the County jail.

115.    Mr. Begay was in the process of being removed by Sheriff's Deputies and/or Sheriff's detention officers and/or Cortez police officers, from a Cortez police car located in a garage connected to the County jail, about 40 feet from where Mr. Begay's relatives had parked.

116.    Plaintiff Elizabeth Begay and Larrison Begay exited their car and walked towards the garage.  They heard a noise of what sounded like wheels of a cart rolling on a cement floor. Plaintiff Felicia Herder stayed in the car because her young child was crying.

117.    At this time, and with reference to the allegations in paragraph 116 above, Plaintiff Elizabeth Begay and Larrison Begay smelled a strong odor of pepper spray and before the garage door had completely closed, Plaintiff Elizabeth Begay saw one of at least three Sheriff's deputies, detention officers or other law enforcement personnel, wielding his flashlight like a weapon immediately after exiting the black and white transport vehicle that had carried Mr. Begay.  Plaintiff Elizabeth Begay and Larrison Begay then walked into the booking area.

118.    When Plaintiff Herder's child stopped crying, she ran inside to the booking area to see her brother.  While inside the booking area, Plaintiff Herder and Plaintiff Elizabeth Begay saw several deputies wheeling her brother into the booking area, who was loosely strapped to and lying on what appeared to be a cart.  The cart was about three feet wide and did not appear to be intended for use with humans or animals.  Plaintiff Elizabeth Begay was about 15 feet away from her son when he was rolled into the booking area by detention officers.

119.    With reference to the allegations in paragraph 118 above, and as Mr. Begay was being wheeled into the booking area, Plaintiff Elizabeth Begay saw that Mr. Begay's head was tilted to one side and dangling off the cart about half-way; she saw that he was wearing socks but had only one shoe on his left foot; she saw that one of his legs was dragging on the floor; she saw that he was drooling; she saw that her son was unconscious because she called out to him in Navajo, but he did not answer or look in her direction; she saw that he was bleeding from the

26

head; and she saw that her son's arms were behind his body as if he was handcuffed lying on the cart.

120.    As Mr. Begay was being wheeled into the booking area on the cart, Plaintiff Felicia Herder noticed a large bump on her brother's left upper temple and a swollen left eye.

121.    Due to her brother's obviously acute medical condition, Plaintiff Herder demanded that Defendant Ragelio Maynard, who, upon information and belief was the Officer in Charge at the time, readmit Mr. Begay to Defendant Southwest Memorial Hospital, Inc.'s emergency room.

122.    Defendant Maynard negligently and with deliberate indifference refused Plaintiff Herder's request and simply told her that Mr. Begay had been medically cleared to return to jail without bothering to acknowledge the present risk to Mr. Begay's health and the need for further emergency medical care, which failure was a proximate cause of Mr. Begay's death on October 27, 2013.

123.    Defendant Maynard's refusal to agree to Plaintiff Herder's request that her brother be readmitted to the hospital was callous because it was obvious Mr. Begay needed further medical attention, and he also knew that Defendant Anna Utley, the jail's Nurse, was not at work because it was after-hours.

124.    With reference to the allegations in paragraph 122 above, Defendant Maynard failed to respond to a known medical emergency when Mr. Begay was jailed on October 26, 2013 in violation of Defendant Montezuma County Sheriff's Office's policies and protocols.

125.    Defendant Maynard also callously told Plaintiff Herder that she could readmit Mr. Begay to the hospital herself if she could post a $500 cash bond for her brother's release, which

was impossible due to the late hour.   But for the refusal of Defendant Montezuma County Sheriff's Office and Defendant Maynard's refusal to readmit Mr. Begay to the hospital on October 26, 2013, he would not have died on October 27, 2013.

126.     Upon information and belief, between the time Mr. Begay was transported from the hospital to the County jail for booking between about 1:30 a.m. and 2:00 a.m. on October 26, 2013, and at other relevant times herein, Mr. Begay was physically mistreated by Defendant Montezuma County Sheriff's Office causing some or all of the physical injuries which were apparent to Plaintiff Felicia Herder, Plaintiff Elizabeth Begay and Larrison Begay (Harrison Begay's brother) while Mr. Begay was wheeled into the booking area, and which injuries Mr. Begay did not sustain prior to being jailed.

127.     When Mr. Begay was found dead in his cell on October 27, 2013 at approximately 3:30 a.m. by Defendant Melissa Curley-House, he had blood inside and around his nose; and he had a black eye with wounds on his forehead and nose consistent with Defendant Montezuma County Sheriff's Office and its employees using excessive force against Mr. Begay before he was jailed on October 26, 2013.

128.     With regard to the allegations above in paragraph 127, it is inconceivable that Defendant Fowler would have discharged Mr. Begay from the hospital to jail bleeding from the head and unconscious, and with such deliberate indifference to his medical needs.

129.     Because he was so intoxicated, Mr. Begay could not answer booking and medical questions during the early morning hours of October 26, 2013 when Defendant Montezuma County Sheriff's Office jailed him.

130.    Upon information and belief, Mr. Begay finished the booking procedure at about 7:00 p.m. on October 26, 2013 when he was conscious, able to stand, and somewhat less intoxicated.

131.    Defendant Montezuma County Sheriff's Office, and its employees, including Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue, and Defendant Richard Gallegos, all of whom were present and responsible for Mr. Begay's welfare on October 26, 2013 and October 27, 2013, acted with deliberate indifference to Mr. Begay's well-being, and negligently failed to request paramedics, hospital staff or medical staff at the jail for the medical treatment and/or evaluation of Mr. Begay in violation of Defendant Montezuma County Sheriff's Office's policies and protocols and who, in addition to having a BAC of approximately 0.40% when he was jailed and being unconscious, had a visible head injury, was visibly in need of detoxification and/or medical stabilization and was in no condition to be jailed.  But for this negligence, Mr. Begay would not have died on October 27, 2013.

132.    Upon information and belief, Defendant Anna Utley, who was the Nurse for Defendant Montezuma County Sheriff's Office, was not present at work at the time Mr. Begay was jailed at about 1:30 a.m. on October 26, 2013 because it was after-hours.

133.    Upon information and belief, after Defendant Utley returned to work and after Mr. Begay had been jailed on October 26, 2013 until his death on October 27, 2013, about a 26 hour period, Defendant Utley failed to assess and treat him; to review Mr. Begay's medical history; to provide information to the detentions officers regarding the care and treatment of Mr. Begay as an inmate with an alcohol use disorder who was likely experiencing acute withdrawal

symptoms, in violation of Defendant Montezuma County Sheriff's Office's policies and protocols, all of which were a proximate cause of Mr. Begay's death on October 27, 2013.

134.    Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue, and Defendant Richard Gallegos, all of whom were present at work and responsible for Mr. Begay's welfare on October 26, 2013, failed as detentions officers to respond to a known medical emergency and contact Defendant Utley when he was jailed to determine the medical need for his readmission to Defendant Southwest Memorial Hospital's Emergency Room or Primary Care unit in violation of Defendant Montezuma County Sheriff's Office's policies and protocols.  But for this negligence, Mr. Begay would not have died on October 27, 2013.

135.    Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue, and Defendant Richard Gallegos, all of whom were present at work and responsible for Mr. Begay's welfare on October 26, 2013 and in Defendant Utley's absence, failed as detentions officers to respond to a known medical emergency and contact the jail doctor when he was jailed to determine the medical need for Mr. Begay's readmission to Defendant Southwest Memorial Hospital's Emergency Room or Primary Care unit in violation of Defendant Montezuma County Sheriff's Office's policies and protocols.  But for this negligence, Mr. Begay would not have died on October 27, 2013.

136.    Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue, and Defendant Richard Gallegos, all of whom were present at work and responsible for Mr. Begay's welfare on October 26, 2013 and in Defendant Utley's absence, failed as detentions officers to respond to a known medical emergency and contact EMS when he was jailed to determine the medical need for his readmission to Defendant Southwest Memorial Hospital's Emergency Room

or Primary Care unit in violation of Defendant Montezuma County Sheriff's Office's policies and protocols. But for this negligence, Mr. Begay would not have died on October 27, 2013.

137.    From about 1:30 a.m. on October 26, 2013 to approximately 3:30 a.m. on October 27, 2013, when Mr. Begay was found deceased in his cell by Defendant Curley-House, Mr. Begay was in the custody of Defendant former Sheriff Spruell, Defendant Montezuma County Sheriff's Office, Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue, and Defendant Richard Gallegos for approximately 26 hours.

138.    Due to Mr. Begay's medical condition, Defendant Montezuma County Sheriff's Office, Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue, and/or Defendant Richard Gallegos put Mr. Begay on medical watch in a holding cell.

139.    At the time of his death, Mr. Begay shared a cell with two other inmates and was not segregated due to his medical condition, in violation of Defendant Montezuma County Sheriff's Office's policies and protocols and which negligence contributed to Mr. Begay's unattended death on October 27, 2013.

140.    A medical watch required Defendant Montezuma County Sheriff's Office to physically check Mr. Begay every 30 minutes.

141.    Upon information and belief, Defendant Maynard, Defendant Curley-House, Defendant Frank Lobue or Defendant Richard Gallegos initially placed Mr. Begay on medical watch at 1:50 a.m. on October 26, 2013.

142.    Upon information and belief, Defendant Montezuma County Sheriff's Office and Defendant Maynard, Defendant Curley-House, Defendant Lebue, and/or Defendant Gallegos negligently and with deliberate indifference failed to check Mr. Begay every 30 minutes, or to

keep him on medical watch before his death on October 27, 2013, which misconduct was a proximate cause of Mr. Begay's death.

143.     Defendant Montezuma County Sheriff's Office and Defendant Maynard, Defendant Curley-House, Defendant Lebue, and/or Defendant Gallegos prematurely took Mr. Begay off medical watch during his incarceration on October 26, 2013, which was negligent and in reckless disregard for Mr. Begay's known medical condition, which was extremely serious and required his readmission to Defendant Southwest Memorial Hospital, Inc.

144.     At all times herein, Defendant Sheriff Spruell, Defendant Montezuma County Sheriff's Office, Defendant Maynard, Defendant Curley-House, Defendant Lebue, and Defendant Gallegos failed to have a nurse on duty to provide medical care or initiate life saving measures to Mr. Begay, and these Defendants otherwise failed to follow applicable policies and protocols with regard to providing nursing and/or medical care to Mr. Begay while in custody.

145.     Upon information and belief, initial life-saving measures to revive Mr. Begay included only chest compressions by Defendant Curley-House, among other Defendant employees, without respirations being administered.

146.     When Mr. Begay was found dead unattended in his cell on October 27, 2013 at approximately 3:30 a.m. by Defendant Curley-House, he had been deceased in his cell for approximately three hours before his body was discovered in rigor mortis, which is indicative of the reckless disregard all Defendants had for Mr. Begay's life.

147.     At the time of his death, Mr. Begay had not been convicted of the alleged crimes for which he was incarcerated on October 26, 2013.

148.    Mr. Begay's death was a proximate result and consequence of the unlawful and reckless conduct of Defendant Spruell, Defendant Maynard, Defendant Curley-House, Defendant Lebue, Defendant Gallegos and Defendant Utley who, upon information and belief, knew that on October 26, 2013, Mr. Begay had been superficially treated by Defendant Southwest Memorial Hospital, Inc. in the hospital parking lot while sitting in the back of a Cortez police car, and only for several minutes without being stabilized and/or transferred to a detox center in Durango.

149.    As a direct and proximate result of the negligent and reckless conduct of all defendants, and their cold, unconscionable disregard for human life, Plaintiffs have suffered economic losses and non-economic losses and injuries including grief, loss of comfort and society, loss of the companionship of Mr. Begay, pain and suffering, impairment of quality of life and emotional distress.  Plaintiffs continue to suffer economic and non-economic damages due to Defendants' negligent conduct towards their loved one, including but not limited to economic damages for funeral expenses, and financial losses due to the financial benefits they would have reasonably expected to receive from their loved one had he lived.  These losses are permanent in nature.

### FIRST CLAIM FOR RELIEF
**(Montezuma County Sheriff's Deputies and/or Detention Officers Ragelio Maynard, Melissa Curley-House, Frank Lobue, Richard Gallegos and Montezuma County Sheriff's Office's Nurse Anna Utley)**
**42 U.S.C § 1983:  Deliberately Indifferent Medical Care and Treatment; Deprivation of the Rights, Privileges and Immunities Secured by the United States Constitution**

150.    Plaintiffs incorporate all paragraphs set forth in this Complaint as if fully set forth herein.

151.    At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

152.    Defendants are persons under 42 U.S.C. § 1983.

153.    Defendants should have known of Mr. Begay's potentially life-threatening medical conditions, and that Mr. Begay's life as a Navajo citizen mattered.

154.    Nevertheless, with deliberate indifference to Mr. Begay's Constitutional right to not be denied necessary medical care, protected by the Due Process clause of the Fourteenth Amendment, Defendants failed to (1) examine, treat, and care for Mr. Begay's steadily worsening condition or give him any medication, either before or after he was jailed and booked on October 26, 2013 until his death on October 27, 2013; (2) send Mr. Begay for adequate medical treatment, including but not limited to readmitting him to Defendant Southwest Memorial Hospital, Inc. for further treatment or administering appropriate medical care to him while incarcerated, including detoxification; (3) ensure that appropriate and certified medical personnel were present for Mr. Begay's intake when he was taken to the County jail from the hospital on October 26, 2013; (4) properly screen Mr. Begay given that when he was jailed on October 26, 2013, he likely had a BAC of approximately 0.40% as confirmed by Dr. Kurtzman, the pathologist who performed the Mr. Begay's autopsy, including but not limited to the use of special protocols for alcoholic prisoners or detainees to be performed by qualified health care professionals or specially trained correctional staff; (5) properly segregate and house Mr. Begay as a vulnerable prisoner with special needs, who was inexplicably jailed with two other inmates at the time of his death, and who unwittingly shared a cell with Mr. Begay for approximately three hours on October 27, 2013 after he had died; (6) conduct visual observations and medical checks on Mr. Begay at proper intervals after his release from the hospital to determine the need for further treatment throughout his incarceration, knowing that he was susceptible to alcohol

withdrawal syndrome, including delirium, seizures and death; (7) provide necessary health care to Mr. Begay by a qualified health care professional knowing he was acutely (and fatally) intoxicated, both before and after he went through the booking process on October 26, 2013; and (8) provide continuity of Mr. Begay's medical care either before or after his discharge or release from the hospital on October 26, 2013.  All of the foregoing resulted in these Defendants' deliberate indifference to Mr. Begay's obvious and serious medical needs as a prisoner with a known alcohol dependency, and all of which proximately caused his death on October 27, 2013.

155.   Defendants did so despite their knowledge of Mr. Begay's obvious and substantial medical needs, placing him at risk of substantial physical harm.

156.   Mr. Begay, as a pre-trial detainee in the Montezuma County jail who had not been convicted of any crimes relative to his arrest on October 26, 2013, had clearly established life, bodily integrity, and liberty rights under the Eighth and Fourteenth Amendments to the United States Constitution, including freedom from deliberate indifference to his known serious medical needs and to proper medical care while in custody.

157.   The acts and omissions of Defendants were within the scope of their official duties and of its employees and under color of state law.

158.   The acts and omissions of Defendants were the legal and proximate cause of Mr. Begay's death.

159.   The acts and omissions of Defendants caused Mr. Begay's damages in that he suffered extreme physical and mental pain during the approximately two days before his death on October 27, 2013.

160.     The actions of Defendants as described herein intentionally deprived Mr. Begay of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him and Plaintiffs' damages and other damages as more fully set forth herein.

## SECOND CLAIM FOR RELIEF
**(Defendants Board of County Commissioners of the County of Montezuma, Colorado, Montezuma County Sheriff's Office, Dennis Spruell, Montezuma County Sheriff)**
**42 U.S.C. § 1983:  Liability for Unconstitutional Customs, Policies, or Practices**

161.     Plaintiffs incorporate all paragraphs set forth in this Complaint as if fully set forth herein.

162.     Defendants, all of whom were acting in a governmental capacity at the time of Mr. Begay's death, implemented and executed a custom, policy or practice, protocol, ordinance, regulation, wide-spread habit, or usage ("custom, policy, or practice")  of: (1) allowing Sheriff's Office Deputies and other personnel to place acutely intoxicated arrestees in jail without first ensuring that they receive appropriate and necessary medical or palliative care; (2) failing to adopt or follow standards for treatment of acutely intoxicated inmates who may need medical or palliative care;  (3) failing to provide necessary staffing and equipment for Sheriff's Office Deputies and personnel to provide necessary medical and palliative care to acutely intoxicated inmates;  and (4) failing to properly train and supervise Sheriff's Office Deputies and personnel in the management and treatment of acutely intoxicated inmates who may need medical or palliative care.  Evidence of these customs, policies, and practices includes, but is not limited to, the high percentage of acutely intoxicated Native Americans arrested in Cortez, the likelihood that such intoxicated persons will experience medical complications, and the pattern of four deaths suffered at the Montezuma County Sheriff's Office within about the past two years prior

to Mr. Begay's death.  In addition, evidence of these customs, policies and practices includes, but is not limited to the deliberate indifference shown by the Sheriff's Office Deputies and personnel toward the medical and palliative needs of Mr. Begay.

163.   Defendants knew of should have known that under these circumstances, their employees would fail to adequately identify and respond appropriately to medical emergencies suffered by acutely intoxicated arrestees and inmates, thereby violating detainees' constitutional rights.

164.   The Defendants stated above in this Second Claim for Relief were deliberately indifferent to the obvious and serious medical needs of patients and jail detainees, knowing that potentially fatal consequences could be suffered by such individuals (including Mr. Begay) as a result of these Defendants' customs, policies and practices, as set forth above.  Defendants could and should have taken reasonable steps to ensure that acutely intoxicated arrestees and inmates received appropriate and necessary medical and palliative care, but failed to do so.

165.   Defendants' customs, policies and practices, as set forth above, were the proximate and legal causes of violations of Mr. Begay's constitutional rights.

166.   Defendants were at all times relevant to this claim acting pursuant to municipal custom, policy, and practice in their actions pertaining to Mr. Begay.

167.   The acts or omissions of Defendants caused Mr. Begay severe mental and physical damage in the roughly two days before his death, and ultimately caused his death.

168.   The actions of Defendants as described herein deprived Mr. Begay of his rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused he and Plaintiffs other damages as more fully set forth herein.

### THIRD CLAIM FOR RELIEF
**(Defendants Southwest Memorial Hospital, Inc., Todd Fowler, M.D.)**
**Medical Negligence/Wrongful Death**

169.    Plaintiffs incorporate all paragraphs set forth in this Complaint as if fully set forth herein.

170.    Defendant Southwest Memorial Hospital, Inc. is the employer of physicians employed by the hospital, including Todd Fowler, M.D., such that it is vicariously liable for their negligent acts and omissions.

171.    As a corporate defendant, Southwest Memorial Hospital, Inc. is legally responsible to Plaintiffs for any harm cause by those employees acting on their behalf.

172.    Defendant Todd Fowler, M.D. owed Mr. Begay a duty of reasonable care.

173.    Each of these Defendants breached that standard of care by failing to provide reasonable medical care to Mr. Begay.  Their acts and omissions included releasing Mr. Begay from the hospital on October 25, 2013, with a BAC of approximately .4, as well as their failure, on October 26, 2013, to properly screen or stabilize Mr. Begay prior to releasing him to the custody of the Montezuma County Sheriff's Department.

174.    Defendants' conduct proximately caused Mr. Begay's death.

175.    But for these Defendants' negligence, Mr. Begay would not have died on October 27, 2013.

176.    In proximately causing Mr. Begay's death, Defendants' conduct was not only negligent, but was also attended by circumstances of malice, or willful and wanton conduct, which Defendants must have realized was dangerous, was done needlessly and recklessly and without regard to the consequences for Mr. Begay and his relatives.

177.    Defendants' conduct proximately caused Plaintiffs to suffer damages more fully set forth above.

## FOURTH CLAIM FOR RELIEF
### (Defendant Southwest Memorial Hospital, Inc.)
**EMTALA, 42 U.S.C. § 1935dd *et seq*., Patient Dumping, Failure to Provide Medical Care and Treatment**

178.    Plaintiffs incorporate all paragraphs set forth in this Complaint as if fully set forth herein.

179.    Defendant Southwest Memorial Hospital, Inc. is the employer of Defendant Todd Fowler, M.D. such that it is vicariously liable for his actions under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd(a) *et seq*. ("EMTALA").

180.    EMTALA, at 42 U.S.C. §1395dd, states in relevant part, as follows:

(a)    Medical screening requirement.   In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this title) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists.

(e)(1)

The term "emergency medical condition" means:
(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in –
(i)    placing the health of the individual . . . in serious jeopardy,
(ii)    serious impairment to bodily functions, or
(iii)    serious dysfunction of any bodily organ or part . . . .

181.    On October 26, 2013, Mr. Begay presented in the emergency department of Defendant Southwest Memorial Hospital, Inc. and was denied emergency care, an appropriate medical screening, or stabilizing treatment based on economic or non-economic grounds, including but not limited to Mr. Begay's inability to pay for medical services, fear of personal liability on the part of the medical personnel who purported to treat him, the perception that Mr. Begay was an incurable alcoholic, and race/ethnicity.

182.    On October 26, 2013, at the time that he was denied emergency care, an appropriate medical screening, or stabilizing, Mr. Begay was suffering from an emergency medical condition.

183.    The failure of Defendant Southwest Memorial Hospital, Inc., and its employees, to perform an appropriate medical screening examination or appropriately treat Mr. Begay for a known emergency medical condition could reasonably be expected to result in placing Mr. Begay's health in serious jeopardy and serious impairment to his bodily functions.

184.    Defendant Southwest Memorial Hospital, Inc. and its employees were capable of providing appropriate medical screening and emergency medical care to Mr. Begay referenced in the paragraph above, and had no valid treatment-related reasons to deny Mr. Begay access to adequate screening and medical care.

185.    On October 26, 2013, Defendant Southwest Memorial, Inc., and its employees, had actual knowledge of Mr. Begay's unstable medical condition and failed to stabilize him with staff and facilities available at the hospital, and to assure, within a reasonable medical probability, that no material deterioration of Mr. Begay's condition was likely to occur upon his transfer to the County jail, and during the period of Mr. Begay's incarceration.

186.     On October 26, 2013, Defendant Southwest Memorial Hospital, Inc. discharged and transferred Mr. Begay to the County jail and did so outside the hospital's facilities, having actual knowledge that Mr. Begay was a patient with an unstabilized emergency medical condition, and that he was not competent to give his informed consent to such transfer.

187.     Defendant's negligent violation of these requirements of EMTALA, including, as well, their misrepresentation of Mr. Begay's medical condition, as reflected in their records and other information, is a proximate cause of Mr. Begay's death on October 27, 2013.

188.     The actions of Defendant as described herein caused Mr. Begay and Plaintiffs economic and noneconomic damages as more fully set forth herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants in an amount which will fully and fairly compensate them for their economic and noneconomic injuries, damages and losses.  Plaintiffs also request judgment for pre- and post-judgment interest, for costs, attorneys' fees and costs, expert witness fees and expenses, punitive damages as allowed by law, and for such other relief as the Court deems proper.

**PLAINTIFFS REQUEST THAT THIS CASE BE TRIED BY A JURY OF SIX (6)**.

Dated this 28th day of January, 2016.

Respectfully submitted,

*s/Russell A. Sacks*
Russell A. Sacks, NM 8031
Attorney at Law
3301-R Coors Blvd., NW
PMB No. 295
Albuquerque, NM 87120
Telephone:  (505) 681-8333
FAX:  (505) 342-2758
E-mail:  rasacks@comcast.net
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Gordon L. Vaughan, Esq.**
**Ann B. Smith, Esq.**
**vnd@vaughandemuro.com**
*Counsel for Montezuma Board of County*
*Commissioners; Montezuma County Sheriff's*
*Office; Dennis Spruell; Ragelio Maynard;*
*Frank Lobue; Richard Gallegos;*
*Melissa Curley-House; and*
*Anna Utley.*

**Lori M. Moore, Esq.**
**lmoore@rmmattys.com**
*Counsel for Southwest Health System, Inc.*
*d/b/a Cortez Primary Care*

**Paul A. Faraci, Esq.**
**pfaraci@faracileasure.com**
*Counsel for Todd Fowler, M.D.*

and I hereby certify that a copy of the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

s/Russell A. Sacks_____
Russell A. Sacks
Attorney at Law
3301-R Coors Blvd., NW
PMB No. 295
Albuquerque, NM 87120
(505) 681-8333 (phone)
(505) 342-2758 (fax)
rasacks@comcast.net (e-mail)
ATTORNEY FOR PLAINTIFFS

43